The next matter, number 23-1638, Juan M. Crespo-Morales v. Nicanor, Caro-Delgado. At this time, would counsel for the appellant please introduce himself on the record to begin. May it please the Court, my name is Robert Fitzgerald and I represent the appellant, Juan Crespo-Morales. I would like to reserve three minutes for rebuttal. You may. Thank you. The District Court denied Mr. Crespo's habeas petition on a record that lacked the most probative trial transcript relating to his claim that the State suppressed material evidence. This suppressed evidence was critical for impeaching the State's star witness, Regino Burgos-Torres, and defending against the State's revenge murder theory of the case. In failing to supplement the record with Burgos' available trial transcript, the District Court violated Rule 5c of the rules governing Section 2254 cases in this Court's mandate. Let's assume that the 5c violation that you're complaining of occurred. But let's also assume the District Court's overall rationale of why the evidence in question doesn't matter is correct for the moment. Which is, roughly speaking, it doesn't matter what the person thought was happening because we're interested in what you're defending. So taking those two things together, there was a 5c violation, so the thing you thought should have been in wasn't in, but the District Court's rationale for why there's no problem is we're going to hold that constant. What would have changed, in your view, if anything, that bears on the rationale the District Court gave if the 5c violation had not occurred? Do you follow? I think I do, Your Honor. A starting place would be we don't know what we don't know because we do not have Burgos' testimony in the record. And there was certainly much in that testimony that could have been relevant to the claim. That transcript that you're referring to, I understand it was destroyed during the hurricane, correct? Your Honor, that's not the information that was in front of the District Court, and I direct the Court to Appendix Page 56. It's the third motion in compliance that the State files following remand, and the State informs the District Court that the entire case file has been located, including Burgos-Torres' testimony in its entirety. They do note that case files were damaged because of flooding in Hurricane Maria, and special handling is needed to review those. It then requested additional time for personnel from Central Archives to prepare the documents under the special handling procedures. There's nothing further from the State indicating what happened with those documents. They certainly didn't produce those documents as they were ordered to do by the District Court. So that negates the State's argument that the transcripts are unavailable. In the alternative, what was needed to be produced was a narrative summary, and that was the District Court's order, and that's an order that would be consistent with Rule 5C as well. Your Honor, the evidence that was suppressed, and that was before the District Court, was a type and character that cast the case in a different light. And where I believe we're talking about right now is in the Court's second issue, certified issue, on appeal. And my position is that this Court can vacate the order, remand with directions to grant the petition, but it is unable to affirm the District Court's ruling. Two reasons. The evidence that is before the Court that was suppressed was both favorable and material. The District Court determined that it was not favorable, and I would note that nothing at trial indicated that the victims of the Pinones murder, who Burgos admitted to committing, there was nothing introduced that they were not responsible for Mr. Crespo's brother's murder. I'm just trying to figure out the logic of how that undermines this. I understand the District Court to say it doesn't matter who actually did those killings, because the relevant question is did your client do what he was alleged to have done, right? Understood, Your Honor. And the reasonability of Mr. Crespo's alleged belief is directly put in issue.  There's no indication, or maybe are you suggesting there is, that the Burgos testimony is going to speak to what your client believed or knew. I don't think that we need to even get there, Your Honor. What we know is that within two weeks of the murder, police knew who the assailants of Mr. Crespo's brother's murders were. We have that at appendix page 176. Maybe I'm misunderstanding something. There is evidence of your client having been the perpetrator in this case. There's evidence of my client? There is no evidence that my client was involved in the murder, the direct murder, the actual murders of the individuals. That was completely Burgos and Burgos alone. No, no, but the crime your client is charged with is what? Is the murder of the individuals in Pinones. Correct. And there is some evidence connecting him to that, independent of the Burgos testimony, correct? My understanding is the only testimony connecting him to that is Burgos' statement that Mr. Crespo had asked him to commit this murder out of revenge, and that was the State's theory and motive alleged in the lower proceeding. And what we see here is that that alleged belief was not a belief that was based in fact. An effective defense counsel could have taken the materials that had been suppressed and put them in front of the jury to say within two weeks police knew who the individuals were who murdered Mr. Crespo's brothers, eyewitnesses knew, and it's not hard to believe that effective defense counsel could have said Mr. Crespo himself knew or at least cast doubt, significant doubt, on Burgos' testimony that Mr. Crespo held a belief unmoored from fact to reality. What this evidence shows is that Mr. Crespo could not have believed in fact that the individuals murdered in Pinones were those responsible for his brother's murders. The district court denied this on a favorability analysis. Again, nothing at the trial indicated that the Pinones victims were not responsible, thus it looked like Mr. Crespo's belief was a belief rooted in fact, but the suppressed materials demonstrate that it was not. It is important to note that at the favorability prong, it's not the strength of the evidence that matters, but whether that evidence could be helpful to the defense, and this clearly could have been. It's a low threshold. The district court determined, affirmed the report and recommendation from the magistrate judge that said that this wasn't favorable. Clearly it was favorable. Any evidence that may have affected the jury's verdict is favorable, and that the suppressed evidence does not wholly undermine the prosecution's theory of guilt does not sap it of its exculpatory value. The district court erred in determining that this was not favorable evidence. Turning to materiality, there was no physical evidence connecting Mr. Crespo to the Pinones murders. The state built its case on the self-serving testimony of Burgos, and Burgos had credibility issues which the state acknowledges from the start. He co-ordered, by his own admission, the murders of the Pinones victims. He orchestrated those murders, and he participated directly in those murders. Burgos was susceptible to further impeachment. Burgos's limited credibility would have been further diminished had the jury learned that Crespo's alleged belief was not rooted in fact. In Supreme Court cases like Auger's and Wehry v. Cain, they note that additional evidence of relatively minor importance might be sufficient to create reasonable doubt when the verdict is questionable. And that's exactly what you have before you is a questionable verdict resting on the weak testimony of an individual who was subject, could have been subject, to significant impeachment. The state led the jury to believe that the belief ascribed to Mr. Crespo was a belief based in fact, but again, we talked about how, I've talked about how that was not accurate. You just tell me your response, which I think you may have given, but I just want to make sure. This is from the district court's opinion. As respondent and the magistrate judge correctly observed, the affidavits would have had no bearing on the co-defendant's credibility as a witness. That's Burgos, correct?  As they both point out, that's the affidavits, co-defendant stated that he committed the murders, that's Burgos again, on orders from the petitioner and did not express having any knowledge as to who the real killers were. Correct. So if all of that's true, what would the missing 5C material done that would have been helpful to defense counsel such that it probably, that there's a probability it would have affected the outcome? Well, again, we're back to the Burgos ascribing a belief that Mr. Crespo held. That order comes, that order comes because according to Burgos, Mr. Crespo was trying to seek revenge for the death of his brothers. And Mr. Crespo's belief was not one rooted in fact, if the alleged belief was not rooted in fact. But before the trial, before the jury, it appeared that it was. And clearly it was not because the materials that had been suppressed did not demonstrate, were not available for defense counsel to effectively use at that proceeding. Again, Burgos was... I guess I've just not followed, that's the part I'm not, where you trailed off right there is where I'm just not quite following. There's Burgos' testimony that he was told by your client to do the killing, correct? Yes, Your Honor. And that it was in revenge for his brother's killing? Correct, Your Honor. And then your point is the people who were being killed were not the ones who killed the brother? Correct, Your Honor. Okay. What does that fact, whether they were or not, have to do with Burgos' testimony that your client told him to do it out of revenge? It goes to the credibility of Burgos' statement. My client, that Mr. Crespo had a belief, had such a belief that he would articulate, when in fact it doesn't, there's no basis in fact or reality that he would hold such a belief in light of those suppressed materials. At least those suppressed materials could have been to impeach that. So just so I follow, the suppressed materials on your take are potentially the best evidence that the belief of the petitioner as to who killed his brothers was mistaken? It at least informs, Your Honor, yes, that is the best evidence about that. And in what, just help me understand that, how is this missing Burgos' testimony going to show that? Missing Burgos' testimony? There's nothing left on this record to connect my client to the murders of the Pinones victims for whom Burgos had murdered. No, no. I thought you were saying that the missing 5C evidence Yes, Your Honor. is going to show that the attributed belief to your client as to who killed his brothers was mistaken in fact? No, Your Honor. The suppressed materials show that. The suppressed materials show that. The suppressed materials are the materials that could have been used because they weren't available at trial. Defense counsel was unable to use those. I am not sure what additionally is going to be reflected in Burgos' testimony. That's what I'm trying to say. You're bringing a 5C error, which is related to what? Well, 5C. No, related to what evidence? The Burgos' testimony, correct or not? Principally, yes, Your Honor. Principally or exclusively? Principally. Review of a Brady claim requires full record review. We know that from this Court's decisions and Carlsby-Whitley. So at a minimum, Burgos' testimony would be required to be assessed.  So what in the Burgos' testimony is going to bear on the belief of your petitioner? That's what I'm trying to understand. Both the district court and the magistrate says they don't see how the Burgos' testimony is going to be relevant on that point. And you want to say that that is the whole testimony. That's the idea, right? Correct. Burgos is the only individual who is connecting my client to this murder, to these murders. It was Burgos' testimony about meeting with my client to facilitate this murder based on an alleged belief that my client had, which the suppressed materials render inaccurate. If there's nothing further, I'll be back on rebuttal. Thank you, Counsel. At this time, would Counsel for the applee please introduce himself on the record to begin? Good morning, Your Honors, and good morning to everyone present. Francisco Gonzalez Magas, representing applees in the case of Barr. May it please the Court. Your Honors, from the arguments and from the reply by appellants, it seems now that the appellants are trying to make this a sufficiency of evidence case, which it isn't. In this case, the issue at hand is whether there was a Brady violation because allegedly some evidence was suppressed that under their contention, it would have an impact on the outcome of the case. Now, the issue of the Burgos' testimony is here in this case specifically in that context. It is in the context of whether the Burgos' testimony would have been impacted in some sort by the information contained in the affidavits that were allegedly suppressed. Now, the answer to that is no. It would have made no difference because our contention is... Let me just understand. Yeah. The evidence connecting... This is just to understand what's going on because I understand why you're saying this is shifting, but just so I get it. The key evidence against the defendant that he, Petitioner, asked Burgos to do the killing... Sure. ...is what? The evidence was a testimony presented during trial by two witnesses, not just Burgos, but there was a second corroborating witness who also was Miguel Hernandez. Okay. And so that's one person. No one's contesting that testimony. It's just there. The Miguel Hernandez testimony, yes. Okay. But then Burgos separately testifies also to Petitioner doing it. Yes.  Yes. Because it is important to note, Your Honor, that it was never the contention of the prosecution that the appellant pulled the trigger and physically killed the victims or the piñones. The contention was that he was responsible for it because he gave the orders to these two specific gentlemen.  And so now Burgos is one of those people. Yes. What is in the record showing Burgos was told by the defendant to do it? The record is the testimony he offered during the trial. Okay. And the... Which was, and I'm sorry to interrupt, Your Honor, but which was repeatedly referenced to in every determination from the verdict trial to the determination for the motion for a new trial that was presented before state court, and then later on during the first proceedings before district court and this court. But that testimony, we don't have a narrative summary of it or the testimony itself, right? No, not at present, Your Honor. So put aside the bearing of that testimony on the Brady claim just for a second. It does seem that you could imagine having that actual testimony to challenge what Burgos actually said would be helpful. But I take it your position is that's irrelevant on the habeas claim because the habeas claim needs a constitutional error hook. The only one identified is the Brady claim. That's exactly our position, Your Honor. Okay. And so the only relevant question for that Brady claim is what would be the relevance of the Burgos testimony that could support the materiality point as the suppressed materials. And your point is, I take it, if there's nothing material about those suppressed materials because who did it isn't going to affect what the defendant believed, nothing Burgos said is going to change that fact if it's about who actually did it. Is that the idea? That's my position, Your Honor, yes. So there's no prejudice in any conceivable Brady violation, correct? We believe there is no Brady violation. Even if there were, it still has to be prejudicial. There's no prejudice here. Exactly. Well, we believe for a Brady violation to occur, it has to be prejudicial. It's not just a matter that some evidence was withheld. It has to be prejudicial to the appellant for a Brady violation. In this case, we don't support, we don't sustain that, we don't understand that information was withheld. And even if it was, it's not material information because, as has been pointed out, it would not have affected neither the prosecution's theory or the fact that the defendant, the appellant and the defendant in the case, believed who the victims were responsible for his brother's killings. But I suppose this is true. The reason they're claiming that the suppressed evidence was a Brady violation is material. Is there contention that somehow is going to bear on Burgos' credibility? That's their contention. And so is it possible Burgos says something like, defendant told me to do this, but then elsewhere in the testimony, Burgos says, I knew who had done it. Absolutely. Might that lead to a jury believing the appellant never told that if he knew that he's making this up? That's an idea, right? So what's your response to that? Well, first of all, we think it's going into deep speculation as to what would have happened. But the problem without having the transcript is that we have to resort to speculation. It's a 5C violation. We're trying to figure out is the 5C violation harmless or not. And I understand that, Your Honor. But even without the availability, without the testimony being available, there is no violation because other parts of the record speak to that point. Now, the question posed, as I understand it – What's the other part that speaks to that point? If I may, if I may. There are parts of the record that state, number one, that it was Burgos who told the – I'm sorry, that it was the appellant who told Burgos that he believed that the victims of the Piñones massacre were responsible for. So he's already established that his belief, regardless of what Burgos' information might be, is that those are the victims. And where does that come from? That comes from the co-defendant? That comes from the testimony. There's testimony offered by the appellant during the hearing for a new trial before state court where he retells what was discussed during the first trial. And he tells that he was – and Burgos, there are references in the record to Burgos' testimony, secondhand references, but references, that established that Burgos understood and testified that the appellant told him that he believed that the responsible parties for his brother's killings were the Piñones massacre victims. But there are other pieces of information that are important. There's also references in the record to establish that the information contained in the affidavits, the affidavits themselves were not shown to the appellant, but the information contained therein was also not told to the witnesses, that the persons who subscribed the affidavits did not share that information with anyone until about a year after the Piñones massacre occurred. So there could not have been information that could not have told the appellant who the actual killers of his brothers were. And we believe the most important piece of information, speaking to this point, is that the appellant himself, during the hearing for a new trial before state court, admitted that the information contained in the affidavits, at least as to – I'm going to use the nicknames Andresito and Tito Rayitas, involvement in his brother's killings was information that had already been discussed during the first trial. Now, the actual role they played in the assassination of his brothers wasn't entered into, it wasn't discussed during the first trial, but their involvement was discussed in the first trial. So the theory and the belief that the appellant had was that, yes, these two individuals were also involved, but that did not mean that the victims of the Ponce massacre were innocent or had no involvement. He believed that all of these parties, five parties in total, had been participants in his brother's killings. So even with the information we know from the affidavits, we know that the information was sort of partly available during the trial, and it did not affect his conclusion, his belief that the Ponce massacre victims were responsible as well. Well, he's never conceded that he told Burgos to do it. There's no confession in the case. No, there's no confession in the case. So the key testimony linking him remains Burgos and the other – And Miguel Andres, yes, Your Honor. Because, again, there's no physical evidence because he didn't participate in the actual killings. And it wouldn't be – we do have the separate co-defendant, but obviously that evidence is bolstered if the second person is telling the same story. If their stories diverge, that would undermine the government's case. Not entirely, but it would definitely create a reason to think maybe the outcome would be different, right? Well, I suppose, Your Honor, but, again, that's not an issue here. Here, everything is in the context of the two affidavits. But what I'm saying is – And I'm sorry, Your Honor, to interrupt, but I said that the appellant did not participate in the actual killings. What I meant by that was that the appellant did not pull the trigger and was not physically present during the killings. He did participate in the coordination and ordering of it. The question is, given how important the Burgos testimony is to the government's theory of the case, is there anything in that testimony that could, linking up with the suppressed affidavits, undermine the Burgos testimony? We don't believe that. Was that theory ever raised? In other words, I think if I'm hearing your opponent today's argument, the idea is that the suppression of the affidavits is material to the extent it would undermine the Burgos testimony about what the belief of the defendant was.  I think that's their theory, but – Yeah, and so then, I guess the question is, if that's the theory, how can we be confident – and I'm not saying there's a right answer to this. I want your response to this. What would be our reason for being confident, without knowing what Burgos actually testified, that something in that testimony wouldn't be inconsistent in some way with those affidavits or lead us to think, there's reason to not believe him now? Well, first of all, to answer that point, it's not that we are completely in the dark as to what Burgos testified during the trial. There are references in the record as to what he testified. There are summaries given by the District Court and the State Court when they heard the motion for new trial, that they do go to Burgos' testimony and describe what he testified. There's also questions made to the appellant during the hearing for the new trial before State Court, where he describes what was discussed during the first trial. So it's not that we are completely in the dark. We have references and we know more or less what was testified to. As to do I believe, how can we be confident, because the record contains enough material to know a couple of things that are determinant, we believe, on this issue. First of all, like I said before, the testimony was to the effect that the appellant believed the Piñones massacre victims were responsible for his brother's killings. Nothing in the affidavits goes to what he actually believed. So there's nothing in the affidavits that would have served to question anything that Burgos testified, because again, the fact that they were the killers doesn't speak to the point of belief. Before you stop, two questions. One, if there is a 5C violation, who is responsible for showing a harmless error or prejudice? In other words, let's say there's a violation. What should I be looking for? Is it then the government's obligation to show it was harmless, or is it the petitioner's obligation to show that there's prejudice from the violation? We would sustain that it has to be, because the burden of proof always has to be with the appellant or in that case. The state has met its burden of proof to prove that the party is guilty, that a jury found that so. On appeal, they bear the burden, too. But if they've met their burden of showing an error under 5C, what then, do we know what the case law says about who's responsible for then showing that that was not harmless? It is still their burden, Your Honor. They have to show that they were prejudiced by it? They have to show that there is a Brady violation. They have to show that they would have impacted the outcome of the case, because the 5C violation, if there is one, if this Court concludes that there is one, only exists in the context of the Brady violation raised by the appellant. They did not raise, because again, the 5C violation only exists when you have to comply with the process, and the process begins with the Brady violation. With respect to 5C, you say there was no 5C violation, right? We sustain that there wasn't, Your Honor. Just remind me what your argument is as to why. There is no 5C violation, Your Honor, because first of all, this Court was not specific as to whether the testimony was necessary, but even if this Court determined that the testimony was necessary to comply with 5C, the circumstances in this case did not allow for the production of this specific transcript, this specific testimony. Now, the party, the appellee, underwent every effort that it could in order to locate it. Once it was located, it informed the Court that it had found the testimony, but it also warned that it had been extensively damaged by Hurricane Maria and the flooding that went with it. But it didn't, as I understand the record, the record doesn't say it's unreadable. The record does say it was extensively damaged, the case file generally. The file generally. And special handling procedures would need to be used. Were needed. The information that I have is that production was not possible even with those handlings. That's not in the record. That's not in the record, Your Honor. That's not in the record. On the record, what is available is that the file itself, the whole file, was extensively damaged, had extensive water damage from Hurricane Maria. Just one more question. And this is something that hasn't been raised by the government of Puerto Rico. But the government is not contesting this claim has not been exhausted properly through the state channels and through the habeas process, correct? That hasn't been raised, Your Honor. I just want to make sure. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself back on the record? He has a three-minute rebuttal. May it please the Court, Robert Fitzgerald on behalf of the Appellant Juan Crespo Morales. There can be no doubt that there was a Rule 5c violation here, Your Honors. The State, in its answer, did not identify what transcripts were available and it did not produce a single document with respect to that in its answer. So for that reason alone, 5c was violated. This Court remanded because it acknowledged that there was a record. What would be the remedy now? Remand again with specific directions or what would be the remedy now? The remedy was to vacate the judgment, remand for the District Court to comport with Rule 5c and this Court's mandate. And the alternative with respect to the Court's second question would be, on this record, would submit that the Court could vacate remand with directions to grant the petition. If we agree with you that there's a 5c violation, just like you violate a rule, the government violates a rule of evidence, then there's usually a prejudice requirement for the defendant to actually win. It's not enough just to show a violation. Sometimes the burden for a constitutional violation, the government has to show it's harmless. Burden shifts. What is the law on once you show a 5c violation, that doesn't tell us necessarily whether we need to do anything about it as a remedy. Is it on you to show you were prejudiced by the 5c violation or is it on them to show that there was a 5c violation but it was just harmless? Two points, Your Honor. I think the case law would support an idea that if the State fails to produce the transcripts, this Court or any Court can take an inference that those materials would not support the State's position. So that would be my first point. Secondly... You take an adverse inference? You could take an adverse inference. Are there cases saying that? I believe I came across those. I could certainly support that with a 28J for the Court. The second point on that, Your Honor, would be just the basic fairness of reviewing a Brady claim. It requires the record in order to assess both favorability and materiality and you can't do that absent those trial transcripts. That's just begging the question of whether those trial transcripts bear on the Brady claim. And without those in front of the Court, there's no way of answering that. That's not right unless there's some threshold. There's certainly documents on planet Earth that have no bearing on the Brady claim. Certainly, Your Honor. Is this a document that there's good enough reason to believe bears on the Brady claim that we could just say, since this is such a document and you didn't get it, then we have to say that there's a 5C error that has to be remedied, go back and address whether it's feasible to get it, etc. So what is the... Just help me. What is the way in which the missing affidavit about Burgos relates not to just straight up, is there any evidence of what Burgos said, but to the Brady claim that is grounding the habeas petition? Your Honor, your focus, I believe, might be a little bit misguided on what is in the Burgos testimony to support the Brady claim. What supports the Brady claim is the suppressed materials, the affidavits and the testimony from the affidavits. And if we thought those alone do not provide a basis, then we don't even have to worry about 5C if those alone support the petition. I concede that, Your Honor, but... But what I'm asking is for the 5C violation, which is about the Burgos testimony, how does that augment the showing of prejudice and materiality for the Brady claim, which relates to the suppressed affidavits? Looking at what we know from the record about what Burgos testified to, and looking at the suppressed materials that demonstrate that it could not have been a belief rooted in fact that Crespo was alleged to have had, satisfies the favorability prong, a very low threshold. And from there and there alone, this Court should be able to remand because it can see on the face of the documents themselves that they were favorable and that there was a potential for material, for them to be material as well. But it's the second point, that you also lost on materiality, I thought. We lost on materiality only because... But just as to that, how does the missing Burgos testimony, I get the favorability point you made, that doesn't get you all the way home on a Brady claim. So with respect to materiality, how does the Burgos testimony enhance the materiality argument you're trying to make with respect to the suppressed affidavits? It was only Burgos who testified that my client had given an order based on a belief of who was responsible for his brother's murders. The evidence, the suppressed evidence is evidence that could have been used to support the defense, that that was not a belief that could have been reasonable and a belief that Mr. Crespo held, that Mr. Burgos' testimony was inaccurate and... So can I say, is this, the weaker Burgos' testimony turns out to be, if it's got internal problems and everything, the easier it would be to say that the evidence from the suppressed affidavits, that there was no factual basis for the attributed belief. The interaction between weaknesses in Burgos' testimony and that makes the case for prejudice stronger, is that the basic idea? Yes, Your Honor. Thank you.